Thank you, your honors. Florence Brummer, may it please the court, from Anthem, Arizona, representing Nathan Lavender. As this court knows, my client was charged with two different charges after two trials. From the first trial, of course, was the assault by striking, beating, or wounding, which was the lesser included offense. And then the second trial was the assault with the dangerous weapon. And there were three issues, and if it would please the court, I'll talk about the pretrial motion to dismiss first. In that, with that motion, the court was incorrect in denying the motion. There was substantial evidence that demonstrated that there was some sort of agreement. And even though Mr. Lavender had the burden of proving that there was an agreement, the government is responsible if there's a lack of clarity in any agreement. Where we see the lack of clarity was in the testimony from each of the witnesses at the evidentiary hearing. And the – although some of the testimony was conflicting, it demonstrated that there was some sort of representation made to Mr. Lavender about giving him some sort of – some sort of non-Federal, not charging the charge as a Federal charge. And we even get this from the government's witnesses, although they don't clearly say it. The counsel, if I just may interrupt, you're using the word clearly. What's their standard of review on assessing this evidence? The standard of review for the court to make? Yes. That the – it was the defendant's burden. What's our review? What's our standard review of the district court's findings about the conflict in testimony? I don't think it's clear, or isn't it? It is, Your Honor. Thank you. This is a situation where whether there was an existence of a cooperation fee or not – agreement or not really turned on the credibility of the witnesses. And so while the defendant called witnesses who suggested that there was some promise made, the government contested that, and the district court is in the best position to weigh the witnesses' credibility. That's correct, Your Honor. And – but if you look at the testimony from the government's witnesses, there was evidence that demonstrated that something was said to Mr. Lavender to make him think that he was getting something for cooperating. And one of the problems with this case was that Mr. Lavender didn't have counsel. And then the counsel The government relies on that as a positive and states, well, he didn't have counsel, the right of counsel didn't apply. But the problem with not having counsel is that if Mr. Lavender would have been assigned counsel, then the counsel could have said, you know what, when we enter into a cooperation-type agreement, it's in writing. It's not oral. And so that was never done. And the government says, oh, well, he didn't have counsel, so that's why it wasn't in writing. That's why there was no promise. But even the government's witnesses demonstrate that things were said to him to make him believe that there was some sort of benefit to cooperating. For example, when he meets with Belvato at the trial, this is after Agent Belvato tries to serve him somewhere between four and five times at the house. And we have the wife, Rolita, who says, he's come to my house, he's talked to me, he said he wants to help my client. And remember, these are unsophisticated people who are not represented by counsel. And Belvato even admits that he says something along the lines of, well, he should step up and it could benefit him, things along those lines. He says he made no promises, but he did make statements that somebody who's not represented by counsel could rely on and think that they're not going to be charged federally. And we see Mr. Lavender acting on these promises because he shows up at the Manuelito trial. He shows up and he testifies without the subpoena. Also, when he talks in November 2009, he sits down voluntarily and he talks to Belvato and says, I hope it stays tribal. And this is in the recording. Belvato says, uh-huh. But he doesn't say anything like, hey, I only submit cases for federal review. There's no deal. What are you talking about? So Mr. Lavender, who's not represented by counsel until he's charged later with the actual charges, is making all sorts of statements, thinking that there's some sort of deal. We even have the lawyer's testimony. And what's interesting is that when Belvato is interviewing Mr. Lavender about his own crime, and he never – Mr. Lavender never says, well, what about our agreement? Why are you doing this? Isn't that probative that he didn't believe that there was some non-prosecution understanding? No, Your Honor, because in the – and I think this was in the transcript of the interview as well, where Mr. Lavender says, I hope it stays tribal. And we have Mr. Belvato saying – Agent Belvato saying, uh-huh. And so there was no more conversation from Mr. Belvato saying, well, why would it just stay tribal? So Mr. Lavender is making these statements thinking that that's going to be the case, because it's leading up from the time of the trial. And we even have from the U.S. attorneys – during the whole Manuelito trial, the U.S. attorneys, even though they knew that Mr. Lavender was involved in an ongoing case, at least from what I can tell from the record, the record's silent on it. In that trial, in the Manuelito trial, there's no record made in front of that judge where they're saying, hey, Your Honor, this case is – Mr. Lavender is being investigated on a separate stabbing case, and we wanted to notify the court. He doesn't have any counsel. He hasn't been charged yet. No record like that is made. And he's just allowed to testify. And we have the statements from Mr. Williams, who was representing Mr. Manuelito, who said he was very surprised to see Mr. Lavender there, because there was no sort of cooperation usually in these cases. And he knew that Mr. Lavender was Mr. Manuelito's friend. And he had – Mr. Williams also said he believed that the U.S. attorney said he was – they weren't sure if they were going to charge Mr. Lavender. I realize I'm less than two minutes. May I reserve the rest for rebuttal? Sure. Thank you. Mm-hmm. May it please the Court. My name is Jennifer Green. I'm an assistant United States attorney from Phoenix. In response to the Court's concerns already on – as to the first issue, this Court must give deference to the district court's determination of all the credibility of the witnesses, as Judge Nguyen pointed out. The district court held a two-day evidentiary hearing where it heard from nine witnesses, including the case agent and two of the assistant United States attorneys in the Manuelito case. And Evalu had the chance to hear all the testimony, listen to the testimony of the defendant who testified at that hearing, who claimed there was a promise made. And the district court rejected that testimony and found that there was no evidence of any promise or any agreement between what we'll call the prosecution team and the defendant in this case, that if you testify, we'll either not take your case federally or we will give you some leniency. Well, I think Mr. Lavender himself conceded that there was no explicit promise made. But what about counsel's point that there was a certain expectation created, which he sort of confirmed by his comment, well, I hope this stays tribal, and that was the agent's opportunity to say, what are you talking about? This is not going to stay tribal. We're considering it for criminal prosecution. Nothing like that was done or said in order to correct Mr. Lavender's misimpression that there was a deal or an agreement on the table. Two things, Your Honor. First, I think we can all agree that the response, uh-huh, is ambiguous. What does it mean? You might say, couldn't it have been better? Of course, the response, uh-huh, could have been better. However, what's interesting about that November 3, 2009 interview is at the very beginning of the interview, when Agent Belvado is sitting down to interview the defendant about his own stabbing, he says, I'm making a recording of this, and he says, quote, if this case is to be charged. So he uses that language, and that is in the interview. That's the beginning of the interview. Then they have the interview where, as Judge Fischer points out, the defendant should be saying, why are we even having this interview? Why are we talking about the stabbing if you and I have an agreement that this is not going to be prosecuted federally? So you can't just say, well, counsel, I think this guy's unrepresented. And what you just quoted at the beginning is, after he's already gone through one interview by, you know, on the other stabbing, to be, say, told this is going to be recorded, and if he's duly charged, if he thinks that this relates to the tribal option, would he not have nonetheless expected that he would be interviewed by the agent? Or if his understanding was it would be kept tribal, he'd still have some obligation or he would be, it's obligation or it wouldn't be unusual for him to be interviewed by the agent. I'm not exactly sure I understand the point. Well, you're saying that he should have known right from the opening statement that this was leading him to a prosecution in federal district court. And therefore, he should have immediately said, why are we even doing this? Because it's going to be kept tribal. Given the jurisdiction of the U.S. Attorney's Office over reservation crimes, why wouldn't he have had a reasonable belief that even if this was going to be kept tribal, it was not unusual or inconsistent with that for him to be asked to sit down with Velvado and talk to him and have it recorded, or that the words duly charged would put him on notice that it was a crime to be prosecuted in the district court as opposed to whatever happened in the tribal court. You're relying on it as a trigger. He's relying on later statements saying, how come Velvado didn't say, what are you talking about? So now you're creating an equal counterpoint by saying he should have reacted to the statement right at the beginning. I'm just not sure there's any evidence as to why he would have seen that as a red flag. Your Honor, he may or may not have seen it as a red flag. And I believe Your Honor's point is, why wouldn't it have been unreasonable that he, at some point, would have had to sit down with, could have sat down with Special Agent Velvado. He was read his Miranda rights. He told him what they were going to talk about. And he agreed to be interviewed and was interviewed. However, when the court looks at that moment or even that interview in the context of all the other evidence in this case that there were no promises, the record is ripe with evidence that no such promise or agreement existed. Okay. Cite two examples. Sure. One example. The testimony of the Assistant United States Attorneys that said, we do not make promises like this. The case hadn't even been submitted to us. So, one, we wouldn't be in a position to deal one stabbing case for another. Even if the Manuelito stabbing was ten points more important to us than the TSAE stabbing, we couldn't have dealt it because we didn't have the case in front of us. Two, we don't enter into oral cooperation agreements. We don't just tell people, okay, we're going to go ahead and do this. We have to talk to supervisors. They would have to talk to the victim. They would have had to make sure that L'Oreal TSAE would be okay with them wanting the testimony in the Manuelito case such that the TSAE stabbing would go away. They didn't do that either. That's two examples. Next, they would have had to run it by their supervisor in order to dismiss one stabbing case and essentially deal one stabbing case for another. Well, that's if they followed the rules. That's true. That's true. And, again, the court — I don't know, you know, when you talk to a witness, you don't really have to be a witness to make sure that they're not going to say, you know, if you go ahead and talk to us, we'll see if we can do anything to make things go easier for you. They never do that. Sometimes they do that. Go ahead. However, the government maintains in this case, Your Honor, the district court was in the best opportunity in the best shoes to make that credibility determination after hearing from all nine witnesses. And after all of that testimony came in, the district court decided there was no credible evidence of promises. My counsel to my left has indicated that there was evidence in the record. Yes, there were people that came forward that said there were, specifically the defendant. However, the district court determined there was no credible evidence that any promises or agreement existed between the prosecution team and the defendant to get him to testify in the Manuelito case. In exchange for leniency in the TSA staffing. Furthermore, as to the misconduct argument within that argument that the defense makes, the district court similarly found that there was no misconduct on the part of the case agent or the assistant United States attorneys in finding also that there was no agreement. Counsel also mentioned earlier that perhaps there was a right to counsel violation. However, there wasn't any need for the defendant to have counsel in the context of the Manuelito case because that case hadn't even come to the United States Attorney's Office for review at the time that he testified in the Manuelito trial. Moving on to the second argument, the government proved with sufficient evidence that the defendant was guilty of assault with a dangerous weapon. The defense makes the argument that at the time of the directed verdict motion that the court should have granted it. I just want to make sure I understand to come back to the right to counsel. You said he wasn't entitled to be advised of a right to counsel because what wasn't open yet? The case, the TSA staffing had not been presented to the United States Attorney's Office. That didn't mean it wasn't under investigation by the agents, was it? It was under continuing investigation, but it had not been completed yet. All right. On to the second argument, the government proved with sufficient evidence that the defendant was guilty of assault with a dangerous weapon. The defense argues that the court should have denied the motion, should have granted the motion, pardon me, because of either just cause or excuse or because the defendant was so intoxicated when he stabbed Laurel TSA that the court should have granted its motion. As to the just cause or excuse prong, the government maintains that that argument is waived. But the record is full of evidence that supports the notion that this was the defendant who wanted to stab Laurel TSA. He, that night, was very angry with both the victim and his wife for Leta Lavender because he found out they were having an affair. And that night, he did – took several measures. That's – counsel, we know that's in your brief, so. Okay. We don't. All right. Do you have anything to wrap up that's new? Not on the second argument. Okay. And as to the sentencing enhancement. Yeah, we – look, it's all in the brief. We don't have to argue everything. If there are no further questions, then, thank you. Thank you, Your Honors. In this case, in – when my client went to the manual veto trial, everyone knew about the TSA stabbing. It was not secret. The U.S. attorneys testified that they knew about it, and they told him, hey, don't worry about it today. So it was definitely on their radar. Also, during the interview, Mr. Valvado says, if this case is to be charged. So he's not saying, hey, I'm charging this case, and by the way, I only charge federal cases. So when Mr. Lavender says, I hope it stays tribal, and Mr. Valvado's the only one who knows that he submits it for federal review, and that's it. Was this argument presented to the district court? Your Honors, I don't actually recall it from the previous counsel's argument to the court. It came out in the testimony that he only charged the federal. I'm just trying to figure out if the – you know, the district court – it's a credibility issue, and if this is a good argument to make to the district court. But the district court has made a finding. But go ahead. Do you have anything else you want to? Also, Your Honor, just Mr. Lavender would have no way to know that there would be an unfillable promise of it being – not being able to go federal. The only people who knew that would be the U.S. attorney. Fair. All right. We understand that. That's all I have, Your Honor. Thank you very much. Thank you. Thank you both. The case argued is submitted, and we will stand and recess.
judges: Noonan, Fisher, Nguyen